IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**FILED IN CLERK'S OFFICE**
U.S.D.C. Atlanta

TONI KNIGHT,

        Plaintiff,

v.

ROBERT TRAVIS AIKEN,

        Defendant.

**MAR 0 3 2006**

LUTHER D. THOMAS, Clerk
By:

CIVIL ACTION NO.

1:04-CV-1909-JEC

## O R D E R  &  O P I N I O N

This case is presently before the Court on plaintiff's Motion for Partial Summary Judgment [17] and Defendant's Motion for Summary Judgment [19].  The Court has reviewed the briefing of both parties and finds both sets of pleadings to be greatly lacking. Accordingly, the Court **DENIES** without prejudice both plaintiff's Motion for Partial Summary Judgment [17] and Defendant's Motion for Summary Judgment [19].  The parties may refile their motions, within thirty days, and any refiling shall include a _thorough_ briefing of the issues.

### BACKGROUND

**I.    Factual Background**

Plaintiff Toni Knight alleges that, from May through August of 2002, she was coerced into a sexual relationship with her probation

officer, defendant Robert Travis Aiken. (Statement of Undisputed Facts ("PSUF") [17] at ¶ 3.)  According to plaintiff, defendant told her that if she refused defendant's advances, her probation would be revoked and she would be returned to jail. (*Id.*)  The last time plaintiff and defendant had sex was in August of 2002. (*Id.* at ¶ 4.) Plaintiff states that beyond the May through August time frame, she is unable to remember the specific dates that she and defendant had sex, as she was under the influence of cocaine and alcohol at the time. (Mot. for Summ. J. ("Pl. Summ. J.") [17] at Ex. 2.) Accordingly, giving plaintiff all benefits of the doubt, the Court will assume that plaintiff and defendant last had sex on August 31, 2002.

## II.  Procedural History

Plaintiff filed her Complaint on June 30, 2004, alleging violations of her Fourteenth Amendment rights under 42 U.S.C. § 1983 and tortious conduct under Georgia state law. (Compl. [1] at 1.) Although the plaintiff filed the Complaint on June 30th, she did not serve the defendant with process and summons until October 11, 2004. (Br. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Summ. J."). Service occurred more than a month after the Court's August 31, 2004 notice directing plaintiff's counsel that the 120 day deadline, set out in FED. R. CIV. P. 4(m), would expire on October 28, 2004.

2

The case is currently before the Court on plaintiff's motion for partial summary judgment, which seeks to have defendant's interrogatory answers and deposition testimony struck, based on defendant's alleged assertion of his Fifth Amendment privilege against self-incrimination.  The case is also before the Court on defendant's motion for summary judgment on the ground that plaintiff's Complaint is barred by the applicable statute of limitations.

## DISCUSSION

### I.   Defendant's Motion for Summary Judgment

Defendant has filed a motion for summary judgment in which defendant contends that plaintiff failed to comply with the statute of limitations. Plaintiff has filed a motion for summary judgment contending that defendant's assertion of the Fifth Amendment during his deposition constitutes an admission (or a failure to deny) by him of the facts alleged in plaintiff's Complaint and, therefore, plaintiff is entitled to summary judgment as to liability on all of her claims.  Because defendant's motion, if meritorious, would end the litigation entirely, thereby mooting plaintiff's motion for partial summary judgment, it is necessary to first review defendant's motion.

3

AO 72A
(Rev.8/82)

In a nutshell, defendant argues that plaintiff's claims[1] are barred by the applicable Georgia statute of limitations because the plaintiff unduly delayed in serving process in the case. Specifically, defendant notes that plaintiff indicated that her last sexual act with the defendant was in August, 2002. Hence, applying the Georgia two-year statute of limitations applicable to the state law claims and borrowed for the federal law claims, plaintiff should have filed her Complaint by the end of August 2004, to avoid dismissal on statute of limitations grounds. Plaintiff did file her complaint on June 30, 2004, which was within the August 31, 2004 deadline, but she did not serve the defendant with process until October 11, 2004.

Defendant cites two Georgia cases which hold that, in order to

---

[1] Defendant draws no distinction between plaintiff's federal and state law claims in his motion, although his brief suggests a belief that plaintiff has only filed a federal § 1983 claim. (*See* Def.'s Mot. for Summ. J. [19] at 2.) ("Plaintiff's Complaint has been brought under the authority of 42 U.S.C. § 1983." (Compl., ¶ 1). The Court is unsure why defendant referred only to a federal claim in the cited sentence, as the same Paragraph 1 referred to by defendant also states: "This is also an action for tortious conduct under state law." (*Id.*)

Nevertheless, defendant's contentions with regard to the Georgia statute of limitations would apply equally to federal and state claims. That is, plaintiff's federal claims are time-barred only if the Georgia service-of-process law is applicable and only if the plaintiff ran afoul of that law. Obviously, if plaintiff ran afoul of Georgia service-of-process rules, she did so as to both her state and federal claims. Indeed, three of the four cases cited by defendant in his brief relate to state law claims.

4

comply with the Georgia statute of limitations, service must also be accomplished, either within the two-year limitations period or within five days after filing the complaint. (*See* Def.'s Mot. for Summ. J. [19] at 2-3.) If service occurs after the later of the expiration of the statute of limitations or the five-day window, the plaintiff must demonstrate that she acted in a reasonable and diligent manner to effect service as quickly as possible; otherwise, the statute of limitations' door will close on her claims.

Defendant argues that plaintiff did not effect service within the limitations period or within five days after the filing of her Complaint, nor did she act in a reasonable and diligent manner to serve the defendant. Accordingly, defendant argues that, under Georgia law, plaintiff's claims are foreclosed by the Georgia statute of limitations.

The question then is whether Georgia law on this point controls an action brought in federal court. Citing an Eleventh Circuit case[2] and a district court case,[3] defendant contends that Georgia law does

---

[2] *Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986).

[3] *Cambridge Mut. Fire Ins. Co. v. City of Claxton*, 96 F.R.D. 175 (S.D. Ga. 1982). (Defendant miscites the case as 95 F.R.D. 175 (S.D. Ga. 1982).) In his citation to this district court decision from the Southern District of Georgia, defendant fails to note that the Eleventh Circuit subsequently issued a reported decision in the same case on appeal. *Cambridge Mut. Fire Ins. Co., v. Claxton,* 720 F.2d 1230, 1232 (11th Cir. 1983). Albeit that Eleventh Circuit decision

5

control.  Defendant's argument that the statute of limitations bars this action certainly finds support in case law, but, with regard to the federal claim, the issue is more involved than defendant's cursory treatment suggests.   Moreover, defendant's two-page discussion of this very unclear issue does little more than raise the issue; it does not grapple with the complexity of the matter.

Unfortunately, plaintiff's briefing was even more sparse and even more unhelpful than was defendant's.  Plaintiff devotes a whopping two sentences of argument to this issue.   These two sentences say no more than that defendant is wrong in his contention that FED. R. CIV. P. 4(m)[4] does not apply to a § 1983 case, but these two sentences do not explain to the Court why defendant is wrong. Plaintiff then cites to five cases--a 1980 Fifth Circuit case, two Supreme Court cases, a twenty year old district court case, and a 1991 Fourth Circuit case--but never offers a hint, not even a parenthetical--as to how these cases inform the argument.  (See Pl.'s Resp. to Def.'s Mot. for Summ. J., [25].)  Presumably, the Court is

---

is consistent with defendant's contention, it would have been nice to have the cite of a court whose decisions are precedential, instead of a district court's decision, which has no binding effect on this Court.

[4] FED. R. CIV. P. 4(m) would give the plaintiff 120 days to serve the defendant, following the filing of the Complaint.  As noted *supra*, plaintiff's service of process was timely under Rule 41(m), but untimely under Georgia law.

AO 72A
(Rev.8/82)

supposed to read the cases and to try to figure out what plaintiff's argument might have been had plaintiff's counsel chosen to take the time to make it.

Moreover, although defendant's argument and legal authority concerning the statute of limitations' issue would necessarily apply to both plaintiff's federal <u>and</u> state claims, plaintiff declines to even brief the effect of this authority on his state claims. Specifically, plaintiff states: "The defendant has not briefed the question of what happens to claims brought under the Court's ancillary jurisdiction and neither will plaintiff." (*Id.*) Yet, defendant did cite authority that is applicable to plaintiff's state claims,[5] and plaintiff's refusal to engage this debate means that the Court is left to figure out without assistance from plaintiff, whether the plaintiff's state law claims would or would not be blocked.

In order to understand the issue, the Court has had to spend many hours going through a Westlaw search in an effort to determine what the cases hold and how they apply here. Clearly, this is not the way the process should work. Attorneys earn money for their

---

[5] The Court is aware that defendant was unapparently unaware that there was a state law claim, even though plaintiff's Complaint indicated that there was a state claim for tortious conduct, albeit the Complaint did not spell out with specificity what the claim was. *See* n.1, *supra*.

7

legal work; they should not expect a judge to do the work for which they are charging clients.    It is unfair and unprofessional for attorneys to offer mere hints at their arguments and then to expect a busy court to intuit their arguments, run them down, and then write them up for the lawyers, much as if the Court were the attorney's law clerk.

Ultimately, this Court has grown weary of doing the work that the lawyers should have done, and it ceases to do so as of now. Instead, the Court will deny without prejudice defendant's motion for summary judgment on statute of limitations' grounds and permit the defendant to refile the motion, along with a complete legal memorandum.    Plaintiff will then be allowed to respond with a memorandum that is also thorough and informative.

The Court will share with counsel its thoughts on the matter, having now expended several days trying to figure out both counsel's skeletal pleadings.    First, as to the state law claims, plaintiff does appear to have violated the statute of limitations on these claims and those claims would appear to be foreclosed.    Specifically, Eleventh Circuit case authority provides that the Georgia statute of limitations and its applicable law, including Georgia's law concerning service of process, will apply to Georgia state law claims in diversity cases that find themselves in federal court, either through removal or by being filed originally there.    *See, e.g.,*

8

AO 72A
(Rev.8/82)

*Cambridge Mut. Fire Ins. Co., v. Claxton,* 720 F.2d 1230, 1232 (11th Cir. 1983); *McAndrew v. Lockheed Martin Corp.,* 177 F.3d 1310, 1314 (1999), *rev.'d on other grounds,* 206 F.3d 1031 (11th Cir. 2000) (*en banc*). *See also, Walker v. Armco Steel Corp.,* 446 U.S. 740, 751 n.11 (1980) (filing a complaint in federal court does not commence a suit based on state law for purposes of statute of limitations, but it might toll the limitation period in a suit based on federal law). Georgia case authority appears to indicate that plaintiff did run afoul of the statute of limitations by waiting until two months after the statute had expired to serve process. *See e.g., Lee v. Kim*, 622 S.E.2d 99 (Ga. Ct. App. 2005); *Scott v. Taylor*, 234 Ga. App. 543, 544, 507 S.E.2d 798, 798 (1998); *McCrary v. Preferred Risk Mut. Ins. Co.,* 198 Ga. App. 727, 729, 402 S.E.2d 519, 520 (1991).

Defendant will presumably make an explicit statute of limitations argument as to state claims in his renewed motion, and, this time, plaintiff will need to respond persuasively in order to avoid dismissal of these state claims. Plaintiff's claim on the federal law claim, made pursuant to § 1983, will similarly be foreclosed if Georgia law on this matter applies. The Court is uncertain that Georgia law does apply as to service of process on the federal law claim, however, and needs the benefit of both counsel's advocacy on this point. *See Walker, supra.*

Specifically, the Eleventh Circuit has recognized that the

9

proper statute of limitations period for all § 1983 claims is the two year personal injury limitations period set forth in O.C.G.A. § 9-3-33. *Wilson v. Garcia*, 471 U.S. 261 (1985) *superceded by statute on other grounds as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-81 (2004); *Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986).   Yet, the Supreme Court has held that in borrowing a state's statute of limitations provisions, the federal court reviewing this federal claim does not necessarily borrow all the other accouterments, including service of process provisions, that might go along with statute of limitations case law.   *West v. Conrail*, 481 U.S. 35, 38 (1987) ("[w]e decline respondents' invitation to require that when a federal court borrows a statute of limitations to apply to a federal cause of action, the statute of limitation's provisions for service must necessarily also be followed...").

Nevertheless, thereafter, in *Hardin v. Straub*, 490 U.S. 536 (1989), which was a § 1983 action, the Supreme Court indicated that, in determining the appropriate statute of limitations, a federal action may borrow more than just the length of time that the state statute sets out for its comparable statute of limitations. Harkening back to the language used in both *Wilson* and the earlier issued *Bd. of Regents of University of New York v. Tomanio*, 446 U.S. 478 (1980), the *Hardin* court declared, "[l]imitations periods in §

10

1983 suits are to be determined by reference to the appropriate 'state statute of limitations and the coordinate tolling rules.'" 490 U.S. at 539.

That statement creates questions when examining Georgia's law on statute of limitations because Georgia case authority repeatedly indicates that a complaint is not filed for purposes of its statute of limitations until the complaint has been served. This case law, however, provides that the period of time before service has been made may be *tolled* if certain steps are taken by the plaintiff; that is, serving the process within five days or within a reasonable and diligent period of time after the Complaint is filed. *See, e.g.,* *Cambridge Mut. Fire Ins. Co. v. City of Claxton*, 720 F.2d 1230 (11th Cir. 1983) ("By holding that service of process does not relate back to <u>toll</u> the statute of limitations unless [service is perfected within five days of filing the complaint or] the plaintiff has acted diligently, the Georgia courts have interpreted their commencement statute and service of process statute as integral parts of the state statute of limitations." *Id.* at 1233 (emphasis added); *Scott v. Taylor*, 234 Ga. App. 543, 544, 507 S.E.2d 798, 798 (1998) ("Where, as here, a complaint is filed near the expiration of the applicable statute of limitation and service is made after the five-day statutory grace period provision, the plaintiff bears the burden of showing that he exercised due diligence in perfecting service. Where

11

AO 72A
(Rev.8/82)

a plaintiff can show that due diligence was exercised in perfecting service, then the service will relate back to the time of the filing of the complaint, effectively *tolling* the statute of limitation.")(emphasis added)(internal citation omitted).

If defendant argues in his renewed motion that *Hardin* requires a conclusion that Georgia's service of process wrinkle on the statute of limitations question means that its service provisions apply to this § 1983 case, then the Court expects plaintiff to do the necessary research, analysis, *and* explication of federal case authority to enlighten the Court as to why the Georgia service provision should not apply to the federal claim, but instead FED. R. CIV. P. 4(m) should apply.  Such an argument can likely be made, but plaintiff should make it, after research, not the Court.

Defendant may refile his motion for summary judgment concerning the statute of limitations **by March 31, 2006.**  Plaintiff shall respond within **twenty (20) days** thereafter.

**II.  Plaintiff's Motion for Partial Summary judgment**

    **A.   Background**

As noted, plaintiff has filed a motion for partial summary judgment on both her federal and state claims.  (*See* Pl. Summ. J [17].)  Plaintiff asserts that defendant's invocation of his Fifth Amendment privilege as to certain questions should cause the Court to

12

strike his interrogatory answers and his deposition testimony.  (*Id.* at 6.)  The Court presumes that plaintiff is arguing that, after striking these matters, the plaintiff's characterizations of the events would stand undisputed.  Specifically, in ¶3 of her Statement of Undisputed Facts, plaintiff asserts: "Plaintiff engaged in sexual relations with defendant because he was her probation officer, and she feared being sent back to prison."  (*Id.*)  Yet, the Court is unsure exactly what the effect of striking these matters would be, as plaintiff does not set out the particular matters that she wishes struck or how those matters would be relevant to her motion. Moreover, plaintiff does not set out in her motion the questions to which defendant asserted his Fifth Amendment privilege.

In his Statement of Material Facts that Remain in Dispute [23], filed in response to the plaintiff's motion for partial summary judgment, defendant indicates that it remains in dispute whether plaintiff and defendant ever engaged in sexual relations or whether the defendant ever unlawfully threatened the plaintiff.  (*Id.* at ¶ ¶ 1-2.)  Moreover, defendant objects to plaintiff's "broad statement" that plaintiff refused to answer numerous questions and to plaintiff's failure to specifically refer to questions in which the defendant asserted the Fifth Amendment.  (*Id.* at ¶ 3.)  Defendant indicates that he invoked his rights against self-incrimination only "in response to a very limited scope of questioning being submitted

13

by Plaintiff's counsel" and that this was "absolutely necessary in order to defend himself in connection with criminal charges that are pending against him that relate to the same subject matter as Plaintiff's Complaint."[6]   Def.'s Br. in Resp. to Pl.'s Mot. for Partial Summ. J. [23] at 5.

In her Reply [26], filed on May 20, 2005, plaintiff explains that she had not set out the questions to which she referred, in contending that the defendant had taken the Fifth, because the depositions had not yet been transcribed.   Plaintiff then set out a series of page and line references, in which she contended that the defendant had taken the Fifth Amendment.   *Id.* at 2.

Yet, when the Court took this case up to review the pending motions, it learned that plaintiff had not filed the deposition, as the local rules would require.   Accordingly, the Court could not read what was contained at the referenced pages.   Therefore, on December 20, 2005, the Court's Courtroom Deputy contacted plaintiff's counsel to instruct him to file defendant's deposition as soon as possible.[7]

---

[6]   Defendant goes on to note that, at the time of the filing of his response (May 9, 2005), a motion to suppress was pending in Newton County Superior Court as to his criminal charges and that the particular answers to some of plaintiff's questions, whatever they were, could have indirectly impacted the success of this motion. .(*Id.* at 5.)

[7]   LR 5.4(b)1 states "The Custodial party shall file with the clerk at the time of use .... with the filing of a motion those portions of depositions .... which are necessary to the motion."

14

Plaintiff's counsel indicated that he would file the requested deposition on December 22, 2005.  Plaintiff's counsel failed to do so.  Instead, plaintiff's counsel filed a "notice of filing" on December 22nd indicating that, with the notice, plaintiff was filing the requested deposition of defendant. Yet, the deposition of Robert Aiken was not actually filed until December 30, 2005.

## B.  **Discussion**

As the defendant's motion for summary judgment will be refiled and as that motion would end the case, were it successful, the Court does not reach the plaintiff's motion for partial summary judgment. Moreover, because, as set out above, it is so difficult to figure out what the plaintiff or the defendant are even talking about, given the abbreviated pleadings that they have filed, the Court denies the motion without prejudice.  To the extent that this issue is raised again, whether through a motion for summary judgment or through a pretrial motion,[8] the Court expects both counsel to file more helpful

---

[8]  The Court believes that a pretrial motion, not another motion by plaintiff for partial summary judgment, would be more efficient, assuming that plaintiff survives the defendant's renewed motion for summary judgment.  There will be a trial on this case, no matter the ruling on the plaintiff's motion for summary judgment, and the same evidence would presumably be presented, whether the case is tried on both liability and damages, or on damages, alone.  The Court can better assess the posture of the case--particularly  if pleadings filed by the defendant have been struck--by hearing plaintiff's testimony.  Prior to trial, the Court will allow the plaintiff to file a motion in limine setting out what matters should be struck.

15

briefs.

Moreover, the Court is uncertain why defendant finds itself in this posture, to begin with.  Typically, if a defendant is the subject of both a related civil and criminal action, the defendant asks that the civil action be stayed until the criminal action can be resolved, in order to avoid the very problem that now exists. Defense counsel did not do so, but instead apparently had his client take the Fifth on certain questions.  Had the defendant filed such a motion, the Court could have stayed the case for a reasonable period of time to allow the criminal case to take its course.  Accordingly, the Court directs that defendant file a pleading, **by March 31, 2006,** explaining the status of the criminal case and whether the defendant would now feel the need to take the Fifth, were the same questions to be again posed to him.

### C.   <u>Settlement Negotiations</u>

The Court does not know whether the parties have attempted to settle this case.  The Court assumes, however, that the defendant will have very limited resources with which to pay an award of damages, should such an award be made.  If this assumption is correct, it might make sense for the parties to explore whether there is any room for them to reach an agreement as to a settlement of the case, in advance of extensive pretrial and trial activity that may simply result in an award of damages that cannot be paid.  Within the

16

same **thirty (30) day** period set out for filing defendant's renewed motion for summary judgment, the Court expects counsel to confer in an effort to see if the case can be settled.

## CONCLUSION

For the foregoing reasons, the Court **DENIES without prejudice** plaintiff's Motion for Partial Summary Judgment [17] AND Defendant's Motion for Summary Judgment [19].

SO ORDERED, this 28 day of February, 2006.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

17

AO 72A
(Rev.8/82)